# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOY SHUTTERLY, | ) |
| Plaintiff, | ) 2:13-cv-948 |
| v. | ) |
| THE PENNSYLVANIA STATE UNIVERSITY, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court is the DEFENDANT'S PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT (ECF No. 16) filed by The Pennsylvania State University ("Penn State" or "Defendant") with brief in support (ECF NO. 17). Plaintiff Joy Shutterly filed a brief in opposition (ECF No. 18); Penn State filed a reply brief (ECF No. 19). Accordingly, the motion is ripe for disposition.

### I. Background

The following background is drawn from the Amended Complaint, and the factual allegations therein are accepted as true for the purpose of this Memorandum Opinion. As the law requires, all disputed facts and inferences are to be resolved in favor of Plaintiff, the non-moving party.

### A. Factual Background

Plaintiff is a forty-nine-year-old resident of Westmoreland County, Pennsylvania and former employee of Defendant. At Penn State, Plaintiff worked in various telecommunications and networking services positions from September 1987 until her termination in March 2012. Most recently, Plaintiff held the title of Programmer / Analyst.

Around December 2008, Michelle Weaver became Plaintiff's supervisor and began a campaign allegedly designed to justify the termination of Plaintiff. For example, Weaver apparently took responsibilities away from Plaintiff and replaced them with menial tasks; removed Plaintiff from a project just before it was dropped by Defendant in order to cast her in a negative light; initiated meetings with Human Resource ("HR") representatives to make false and exaggerated claims about Plaintiff; placed Plaintiff on probation for fabricated performance-related issues; and threatened Plaintiff with dismissal should she discuss Weaver's actions with anyone. Before Weaver assumed her supervisory role, Plaintiff had never been disciplined by her employer.

In January 2012, Plaintiff filed a workplace complaint that purportedly described the "discriminatory conduct to which she was being subjected" by Weaver. . Pl.'s Am. Compl., ECF No. 13 at 4. Afterward, the conduct of Weaver and unidentified others allegedly "escalated as they retaliated against her for making complaints." *Id.* This so-called "escalation" allegedly included Defendant withholding notes from HR meetings that it was required to supply to Plaintiff and denying her the opportunity to make any verbal or written rebuttal(s) to the fabrications made regarding her job performance during the probationary period.

At some indeterminate point in time, Plaintiff provided Defendant with documentation that established that Weaver had fabricated some of Plaintiff's poor evaluation(s). The "appeals" filed by Plaintiff were, however, denied under the rational that the applicable HR process had been appropriately followed. According to Plaintiff, however, Defendant failed to properly investigate any of the issues which she raised in her internal complaints.

On February 16, 2012, Plaintiff attended a meeting with Weaver, HR Manager Susan Morse, and HR Generalist Deb Johnson. During the meeting, Weaver informed Plaintiff that she

was being terminated "for failing to meet the expectations for her job." Plaintiff was later replaced by a "significantly younger" individual with less experience. Penn State also hired another "significantly younger" individual to fill an identical position.

Plaintiff now submits that the reason(s) given for her termination were "a pretextual attempt to conceal age discrimination and a hostile work environment designed to terminate her employment prior to her vesting in certain retirement benefits." *Id.* at 3. Moreover, at the time of her termination, Plaintiff was "less than five months away from vesting in a lifetime benefits plan." *Id.* at 5.

### B. Procedural History

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 13, 2012, which was cross-filed with the Pennsylvania Human Relations Commission ("PHRC"). The EEOC issued a Notice of Dismissal and Right to Sue Letter on April 9, 2013. This lawsuit followed.

Plaintiff commenced this action on July 3, 2013 by filing a three-count Complaint against Penn State, alleging violations of the Age Discrimination in Employment Act ("ADEA") and the Pennsylvania Human Relations Act ("PHRA"). In response, Defendant filed a Rule 12(b)(6) motion to dismiss in which it sought dismissal of the all three counts. Plaintiff filed a brief in opposition and moved to amend her complaint. Thereafter, the Court granted the motion to amend and denied the motion to dismiss as moot.

Plaintiff filed an Amended Complaint on November 18, 2013, which sets forth disparate treatment and retaliation claims under the ADEA at Counts One and Two as well as a related PHRA claim at Count Three. Defendant filed a partial Rule 12(b)(6) motion in response,

arguing that the retaliation claim does not meet the federal pleading standards. Plaintiff opposes the motion, to which the Court now turns.

## II. Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of a complaint, which may be dismissed for the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) Upon review of a motion to dismiss, the Court must accept all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011), *cert. denied*, 132 S. Ct. 1861 (2012) (citing *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010)). However, as the Supreme Court of the United States has made clear in *Bell Atlantic Corp. v. Twombly*, such "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. 554, 555 (2007).

The Supreme Court later refined this approach in *Ashcroft v. Iqbal*, emphasizing the requirement that a complaint must state a plausible claim for relief in order to survive a motion to dismiss. 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 555). Nevertheless, "the plausibility standard is not akin to a 'probability requirement,'" but requires a plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).

To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal,* the United States Court of Appeals for the Third Circuit instructs that a district court must take a three step approach when presented with a motion to dismiss for failure to state a claim. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.7 (3d Cir. 2010) (noting that although *Iqbal* describes the

process as a "two-pronged approach," it views the case as outlining three steps) (citing *Iqbal*, 556 U.S. at 675). First, "the court must "tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* at 130 (quoting *Iqbal*, 556 U.S. at 675) (alteration in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Third, "'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Accordingly, the Court must separate the factual and legal elements of the claim and "accept the factual allegations contained in the Complaint as true, but [ ] disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (citing *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-57; *Burtch*, 662 F.3d at 220-21). The Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (citing *Iqbal* 556 U.S. at 678). The determination for "plausibility" will be "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

However, nothing in *Twombly* or *Iqbal* changed the other pleading standards for a motion to dismiss pursuant to Rule 12(b)(6) and the requirements of Rule 8 must still be met. *See Phillips v. Co. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations omitted). The Supreme Court did not abolish the Rule 12(b)(6) requirement that "the facts must be taken as

true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on those merits." *Phillips,* 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 553). Rule 8 also still requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 677-78 (citing Fed. R. Civ. P. 8(a)(2)). While this standard "does not require 'detailed factual allegations,' [ ] it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 544-55). Simply put, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

### III. Discussion

Defendant argues that Plaintiff fails to plead facts sufficient to show that she engaged in protected activity, an element of a prima facie case of retaliation. In support, Defendant submits that the alleged "protected activity" appears to be a workplace complaint about conduct that Plaintiff labels as "discriminatory," while nothing in the Amended Complaint suggests that the conduct was actually discriminatory. Defendant's position is unavailing at this juncture.

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1)). "The ADEA also prohibits retaliation based on age by making it 'unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has *opposed any practice made unlawful by this section*, or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceedings, or

litigation under this chapter.'" *Patel v. Shinseki*, 2:12-CV-00969, -- F. Supp. 2d --, 2013 WL 6199566, at *5 (W.D. Pa. Nov. 27, 2013) (quoting 29 U.S.C. § 623(d)).

To establish a prima facie case of retaliation in violation of the ADEA, a plaintiff must show that: "(1) she was engaged in a protected activity; (2) the defendant took an adverse employment action after or contemporaneous with the plaintiff's protected activity; and (3) a causal link exists between the plaintiff's protected activity and the adverse employment action." *McClement v. Port Auth. Trans-Hudson*, 505 F. App'x 158, 162-63 (3d Cir. 2012) (citing *Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 508-09 (3d Cir. 2004)). The analytical framework for a PHRA retaliation claim is identical. *See Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002).

As to the first prong, the ADEA "provides that a person has engaged in 'protected conduct' when s/he opposes discrimination on the basis of age." *Barber v. CSX Distribution Servs.*, 68 F.3d 694, 702 (3d Cir. 1995). A formal letter of complaint to an employer or the EEOC is not the "only acceptable indicia of the requisite 'protected conduct' under the ADEA." *Id.* Other acceptable forms of protected activity "include formal charges of discrimination 'as well as informal protests of discriminatory employment practices, including making complaints to management . . . protesting against discrimination by industry or society in general, and expressing support of co-workers who have filed formal charges.'" *Id.* (quoting *Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) (analyzing Title VII's analogous opposition clause)). Thus, a court must look to the message conveyed, and not just the medium of conveyance. *Id.*

Under the opposition clause, an employee need not prove that the conduct was actually in violation of anti-discrimination laws, but must "demonstrate that he 'hold [s] an objectively

reasonable belief, in good faith,' that the activity she opposes is unlawful under the ADEA." *Klastow v. Newtown Friends Sch.*, 515 F. App'x 130, 132 (3d Cir. 2013) (quoting *Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir.2006) (interpreting Title VII's similar retaliation clause)). A general complaint of unfair treatment does not, however, translate into a charge of illegal age discrimination. *Barber*, 68 F.3d at 702.

In this case, Plaintiff pleads sufficient facts to support a showing of protected activity. The Amended Complaint initially sets forth the specific conduct that Plaintiff opposed via workplace complaint and simply labels it as "discriminatory conduct to which [she] was being subjected." The Court must, of course, ignore labels and conclusions. However, elsewhere in her pleading, Plaintiff alleges that she made complaints to management about the hostile work environment, age discrimination, and retaliatory conduct and that she suffered adverse employment actions as a result. The Court must accept these averments as true and cannot conclude that a workplace complaint which raises ADEA violations constitutes a generalized charge of unfair treatment. Thus, in drawing all reasonable inferences in favor of Plaintiff, the Court finds that the First Amended Complaint sets forth a plausible retaliation claim.

## IV. Conclusion

For the reasons hereinabove set forth, the Court will deny the Partial Motion to Dismiss the Amended Complaint. An appropriate Order follows.

                                                                                       McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| JOY SHUTTERLY, | ) |
|---|---|
| Plaintiff, | ) 2:13-cv-948 |
| v. | ) |
| THE PENNSYLVANIA STATE UNIVERSITY, | ) |
| Defendant. | ) |

## ORDER OF COURT

AND NOW, this 10th day of April, 2014, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that the DEFENDANT'S PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT (ECF No. 16) is **DENIED**.

IT IS FURTHER ORDERED that Defendant, The Pennsylvania State University, shall file a responsive pleading on or before April 29, 2014.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc:  Joel S. Sansone
     Email: joelsansone03@msn.com

     John A. Snyder
     Email: jasnyder@mqblaw.com
     Philip K. Miles, III
     Email: pkmiles@mqblaw.com